IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES REEM,<br><br>    Petitioner,<br><br>v.<br><br>VICKI HENNESSY,<br><br>    Respondent. | Case No. 17-cv-06628-CRB<br><br>**ORDER GRANTING MOTION TO WITHDRAW STAY AND IMPOSING NEW STAY** |

On Nov. 16, 2017, James Reem filed a petition for habeas corpus in this Court. Reem, who is avowedly homeless and penniless, argued that he was being held in violation of his rights under the United States Constitution because the state magistrate had ordered him released on $330,000 bail without considering non-monetary alternatives, such as reporting or electronic monitoring, that would ensure his appearance at trial. Arguing on behalf of the San Francisco Sheriff, the California Attorney General conceded that Reem's detention violated his constitutional rights. This Court granted Reem's petition on Nov. 29, ordering the sheriff to either release Reem or arrange for a second detention hearing. Reem was afforded another hearing in San Francisco Superior Court on Nov. 30. The state judge considered non-monetary alternatives, but ultimately maintained the earlier order, while acknowledging that it amounted to a detention order in practical effect because Reem was unable to afford bail in any amount.

Reem then moved this Court to withdraw the stay of its Nov. 30 order and grant his release. Finding that Reem's detention violates the Equal Protection Clause of the Fourteenth Amendment, this Court grants his motion. However, it stays its order to allow the state an opportunity to conduct a hearing that comports with this order on or before

Dec. 22.

## I. BACKGROUND

### A. California's Pre-Trial Detention System

California law entitles criminal defendants to an arraignment within 48 hours of arrest. Cal. Penal Code § 825. The arraignment generally functions as a detention hearing, as well. See Cal. Penal Code § 1269(b). While judges may release defendants on their own recognizance or on a range of non-monetary conditions, usually a defendant is released on bail. See Curtis E.A. Karnow, "Setting Bail for Public Safety," 13 Berkeley J. Crim. L. 1, 3 (2008). The idea behind the bail system is simple: requiring a defendant to put up money that is returned only if he appears in court makes it more likely that he will do so. A defendant may satisfy bail by posting collateral, such as the deed to a house, Cal. Penal Code § 1298; by posting the total sum with the court, Cal. Penal Code §§ 1269, 1295(a); or (most often) by purchasing a bail bond, generally set at a non-refundable cost of ten percent of the total bail amount, Cal. Penal Code §§ 1269, 1278; see also Karnow, supra, at 3–4. Bail is discharged if the defendant appears for all his court dates. It is forfeited if the defendant fails to appear. Id. at 4.

### B. Procedural History in Reem's Case

Reem is a 53-year-old San Francisco resident who is being detained in county jail pending trial. He is currently homeless and unemployed. He was arrested on July 28, 2017, and charged with first-degree residential burglary, unlawful driving or taking of a vehicle, receiving or buying stolen property, identity theft, resisting arrest, and being a felon in possession of a firearm, among other things. Dkt. 1 Ex. 1 at 40–44.

At Reem's arraignment before a magistrate in California Superior Court, defense counsel requested release without financial conditions. The magistrate denied this request, setting bail at $330,000. Dkt. 1 Ex. A at 58. Reem moved to reduce bail, arguing that the amount set was unreasonably high, and that, in the alternative, the magistrate failed to

make the findings required for a pretrial detention order. A different magistrate denied the motion. Dkt. 1 Ex. A at 97–98.

On Sept. 11, Reem filed a petition for a writ of habeas corpus in the California Court of Appeal. The court summarily denied his petition on Sept. 14. Dkt. 1 Ex. B at 40. Reem next petitioned for review in the California Supreme Court. The Attorney General filed a statement of non-opposition on behalf of the San Francisco Sheriff, acknowledging that the initial hearing before the magistrate was deficient on several grounds. Response to PFR (dkt. 1 Ex. C). The Attorney General conceded that the magistrate failed to discuss whether Reem was a flight risk, failed to explain his determination that Reem posed a threat to public safety, and failed to consider Reem's ability to pay the bail amount "with particular attention to whether available nonmonetary alternatives could serve the same purpose." Id. at 16. The Attorney General stated that, given the deficiencies in the record, Reem's bail hearing was constitutionally inadequate. Id.

The California Supreme Court denied the petition for review on Nov. 15. Dkt. 1 Ex. D. The following day, Reem filed an "emergency petition for writ of habeas corpus" in this Court. Dkt. 1. The Attorney General moved to dismiss the petition (dkt. 5), arguing that this Court should abstain from deciding the matter under Younger v. Harris, 401 U.S. 37 (1971). The Court declined this invitation and granted Reem's petition on Nov. 29, but stayed its order to allow the state court an opportunity to conduct another hearing that accorded with constitutional requirements. Dkt. 8.

The Superior Court held another detention hearing the following day. See Nov. 30 Tr. (dkt. 11). The judge found that Reem represented both a risk of flight and a threat to the public safety, and that there were no non-monetary conditions that would mitigate those risks. Nov. 30 Tr. at 23. He thus declined to alter the terms of Reem's release. Nov. 30 Tr. at 27. The judge stated, however, that he was willing to consider releasing Reem on the condition that Reem be monitored electronically, pending an assessment by the Sheriff's Department. Nov. 30 Tr. at 32. The Superior Court held a subsequent hearing on Dec. 5 to further explore the possibility of electronic monitoring, but deemed monitoring

3

infeasible. Dkt. 16 Ex. A at 11. When defense counsel challenged some of the evidence on which the court had based its finding that Reem represented a flight risk, the court appeared to amend its earlier order to state that it was only holding that Reem was a threat to public safety: "Regardless of the lack of bench warrants or the prior convictions for strike offenses, I do see an escalation here and a pattern of further narcotics use, theft and burglary. . . . [T]he Court will find . . . that he represents a significant public safety risk." Dec. 5 Tr. at 7:13–15.

Following the Nov. 30 hearing, Reem moved this Court to withdraw the stay, arguing that his Superior Court hearing was constitutionally inadequate. Dkt. 9. This Court held a hearing (dkt. 12) and ordered the parties to submit supplemental briefing on the issue (dkt. 14). It held a second hearing on Dec. 20.

## II. STANDARD OF REVIEW

Because Reem is not in custody "pursuant to the judgment of a state court," see 28 U.S.C. § 2254(a), this Court reviews Reem's claims under 28 U.S.C. § 2241, which implements the "general grant of habeas corpus authority," see Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008). Conclusions of law are reviewed de novo, and findings of fact are reviewed with a presumption of correctness. Hoyle v. Ada Cty., 501 F.3d 1053, 1059 (9th Cir. 2007).

## III. DISCUSSION

Reem argues that his detention violates both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. The Court agrees that Reem's detention runs afoul of the Equal Protection Clause. Accordingly, it does not reach his due process argument.

Under the Equal Protection Clause of the Fourteenth Amendment, wealth-based classifications are reviewed under a rational basis standard. That is, a wealth-based classification will pass muster so long as it is rationally related to a legitimate government

interest. Reem argues that setting monetary bail without considering his ability to pay violated the Equal Protection Clause because a wealthy man in his shoes would have been released. But an individual is not necessarily denied equal protection because he is unable to make bail. Where bail serves as an incentive for a defendant to make court appearances or avoid committing additional crimes, it is rationally related to a legitimate state interest. See United States v. Jessup, 757 F.2d 378, 389 (1st Cir. 1985), abrogated on other grounds by United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990) (The defendant "has been detained . . . not because he cannot raise the money, but because without the money, the risk of flight is too great."). That is, where a person's wealth provides a lever to shape his behavior, the state has a rational basis for treating one with money differently from one without.

Equal protection issues do arise, however, where there is no rational relationship between the setting of bail and the state's legitimate interests. This appears to be the case under California's bail scheme when it comes to imposing bail to address public safety concerns. By statute, defendants do not forfeit the bail money they have put up solely by virtue of committing a new offense while out on bail. Cal. Penal Code §§ 1269, 1305(a); see also Cal. Penal Code § 1278(a). It follows, then, that it is illogical for a California court to set bail in an effort to mitigate the threat a defendant poses to public safety. See Karnow, supra, at 19–20. At the same time, the California Constitution guarantees bail (or release on other conditions, or on no conditions) except on a narrow range of charges: capital charges, charges involving sexual assault or violence, and charges that the defendant has made threats. Cal. Const. art. I § 12.

The clear import of this scheme is that, except on this narrow range of charges, it is pointless for a court to consider whether someone who has the means to make bail represents a threat to public safety. A person who can afford bail is released, notwithstanding that he may pose an appreciable risk to public safety. The court may impose additional, nonmonetary conditions of release to address that risk. But the bail the person posts does nothing to incentivize him not to commit crimes. See Karnow, supra, at

5

2 (It is "not usually possible" to set bail at a level that will ensure public safety, because under California law, "there is no relationship between the dollar amount of bail and any in terrorem inhibiting effect that would deter future criminal conduct by the defendant.").

The only equitable way to make this system work would be to release indigent people without requiring bail when the court deems them a threat to public safety, but not a flight risk. And yet California's statutory scheme requires judges to set bail in such cases. A court must set bail whenever a defendant's release would "compromise public safety." Cal. Penal Code § 1270. Indeed, public safety must be "the primary consideration" in setting bail. Cal. Penal Code § 1275(a); see also Cal. Const. art. I § 28 ("Public safety and the safety of the victim shall be the primary considerations."). The upshot is that the poor man who is deemed a threat to public safety remains imprisoned, while the wealthy man who is a threat to public safety goes free—though he has no more incentive not to commit crimes than the poor man would have had, had he been released.

Understanding how this odd scheme came about requires a brief detour through the history of California's bail system. Historically, courts set bail for the purpose of ensuring that a defendant would make his court appearances. See People v. Gilliam, 41 Cal App. 3d 181 (1974), overruled on other grounds by People v. McGaughran, 22 Cal. 3d 469 (1978) (purpose of bail is to ensure defendant's presence, not protect public safety); see also Stack v. Boyle, 342 U.S. 1, 9 (1951) ("The question when application for bail is made relates to each [defendant's] trustworthiness to appear for trial and what security will supply reasonable assurance of his appearance.") (emphasis added). A debate emerged in the 1950s, however, about whether defendants should be detained pending trial in order to prevent them from committing more crimes. States began to enact statutes aimed at preventive detention. See Donald B. Verrilli, Jr., "The Eighth Amendment and the Right to Bail: Historical Perspectives," 82 Colum. L. Rev. 328 (1982); Barbara Gottlieb, Nat'l Institute of Justice, The Pretrial Processing of 'Dangerous' Defendants: A Comparative Analysis of State Laws 25 (1984), reprinted in Report on Bail Reform Act of 1984, H.R. Rep. No. 98-1121, app. A, at 90.

In the June 1982 election, California featured dueling ballot propositions that touched on the bail issue: Proposition 4 and Proposition 8. Both received a majority of the vote. Proposition 4 amended the California Constitution (art. I § 12) to require courts in setting bail to take into account "the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case." Proposition 8, meanwhile, amended the California Constitution to add the following language:

> Public Safety Bail. A person may be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required. In setting, reducing or denying bail, the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case. Public safety shall be the primary consideration. A person may be released on his or her own recognizance in the court's discretion, subject to the same factors considered in setting bail.

Cal. Const. art. I § 28. However, the California Supreme Court later ruled that the bail provisions of Proposition 8 were inconsistent with Proposition 4, which had garnered more votes. People v. Standish, 135 P.3d 32, 41 (2006), as modified (Aug. 23, 2006).

Nevertheless, in 1987, the California legislature added the language about public safety contained in the failed ballot initiative to Penal Code §§ 1270 & 1275. The sparse legislative history "did not explain how the new law was expected to work, that is, how setting bail at a given amount was supposed to protect public safety." Karnow, supra, at 8. It simply included a copy of the United States Supreme Court's opinion in United States v. Salerno, 481 U.S. 739 (1987)—in which the Court upheld the federal Bail Reform Act of 1984, which provided that federal courts could detain defendants prior to trial when they represented a threat to public safety—and cited Proposition 8, the failed initiative. Larry Stirling, Cal. Assemb. Comm. on Pub. Safety, Position Paper on California and Federal Bail Provisions (1987). The legislature did not, however, amend the state's statutory scheme to provide that defendants forfeit bail when they commit new crimes. In enacting Marcy's Law in 2008, voters again amended § 28 to add language similar to that

7

in Proposition 8 requiring courts to consider public safety in setting bail.[1]

That California's statutory scheme is illogical does not by itself raise an equal protection concern. The disparate way in which it affects the wealthy and the indigent does, however. The state constitution requires state courts to set bail in cases like Reem's, yet it has no rational basis for doing so where the defendant only poses a threat to public safety—not a flight risk. The Supreme Court has made clear that the Equal Protection Clause bars states from imprisoning an individual "solely because of his indigency." Tate v. Short, 401 U.S. 395, 398 (1971); see also Bearden v. Georgia, 461 U.S. 660, 671–72 (1983) (court may not revoke probation for failure to pay a fine or restitution solely because probationer does not have the means to pay). That is precisely what the state court did in Reem's case. The state cannot detain the indigent person based on public safety concerns while letting the wealthy person walk only because he has money.

At oral argument, Reem suggested that this particular feature of California's detention scheme does not present an equal protection issue because the Superior Court would have set bail at an unattainable amount no matter who the defendant was. But the state-court judge said that he was basing the amount of bail on the bail schedule adopted in San Francisco County. Dec. 5 Tr. at 10:7–14. There is nothing in the record to indicate that the judge took into consideration Reem's ability to pay at all in setting bail, or that he would have taken ability to pay into consideration if Reem were able to make bail and departed upward from the bail schedule. And indeed, if Reem wins the lottery tomorrow, he will be release solely because of his wealth. Hence the equal protection issue. See Tate, 401 U.S. at 398.

## IV. CONCLUSION

As described above, the Superior Court appeared to base its decision to release Reem on $330,000 bail (instead of on his own recognizance) solely on the basis that he

---

[1] The validity as a matter of state law of the constitutional and statutory provisions described here is not before this Court on this habeas appeal.

8

represented a threat to public safety. This infringed on Reem's right to equal protection of the laws. The Court therefore **GRANTS** Reem's motion to withdraw the stay of this Court's Nov. 29 order granting his habeas petition.

However, it is unclear from the record whether the Superior Court in the alternative based its decision to impose bail on the basis that there was a risk Reem would not appear in court. Given the novelty of the Court's holding and the respect due the state court, the Court **STAYS** its order, provided that a further hearing is conducted on or before Dec. 22. Should this Court entertain another motion to withdraw the stay, its review of any future state detention order would be aided if the Superior Court articulated which standard(s) of proof and burden(s) of production apply to the issue of whether there are reasonable alternative conditions of release that would sufficiently mitigate the risk of flight and/or the threat to public safety.

**IT IS SO ORDERED.**

Dated: Dec. 21, 2017

CHARLES R. BREYER
United States District Judge